IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ALBERT CORTEZ #1648410 | § | |
| v. | § | CIVIL ACTION NO. 6:12cv892 |
| DR. PAUL SHRODE, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Albert Cortez, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. The lawsuit has been assigned to the docket of the undersigned United States Magistrate Judge for entry of final judgment pursuant to 28 U.S.C. §636(c). The named defendants are Dr. Paul Shrode, Nurse Andrews, and "the TDCJ medical system."

In his complaint and at an evidentiary hearing, Cortez states that he has been having health problems for over a year but has not received the proper diagnosis, nor has his condition been taken seriously. He says that he feels pain and "strange feelings which come and go" in his stomach and chest, but Dr. Shrode told him that X-rays won't tell very much.

Cortez states that in 2011, he went to the Ellis Unit, where he was told that he had H.pylori in his stomach.[1] Cortez stated that he has been asking for a "proper" diagnosis, adding that he had a bowel obstruction in the free world but that he did not know if this was the same problem he was experiencing now.

---

[1] H.pylori, or heliobactor pylori, is a very common bacteria, with infection rates ranging from 20 to 30 percent of all persons in industrialized countries, to 70 percent of persons in developing countries. Most people with the infection experience no signs or symptoms, although the bacteria can cause stomach ulcers and inflammation of the stomach lining. *See* Hazel v. Bell, civil action no. 9:08cv216. 2009 WL 2163460 (E.D.Tex., July 16. 2009, no appeal taken).

As treatment, Cortez stated that he was receiving medication for heartburn, cholesterol, and high blood pressure, but he still has the same problems. He received medication for H.pylori at the Ellis Unit but not at the Coffield Unit, but the medication which he received did not help. He has not been diagnosed with acid reflux disorder but has received medication for it, which he described as "the purple pill." Cortez said that he has "quit complaining because it does no good."

Nurse Kathy Gray, a correctional nurse also present at the evidentiary hearing, testified under oath concerning the contents of Cortez's medical records. Nurse Gray stated that Cortez was treated for H.pylori at the Ellis Unit in November of 2011 and January of 2012. At that time, in January of 2012, Cortez reported that his medications were almost gone and his symptoms were resolved, and he made no complaint of heartburn.

Nurse Gray also said that Cortez has been seen by the medical department some 10 to 12 times since January of 2012. He was referred to the hospital in Galveston once, but did not show up for the appointment. He was referred again in August of 2012, but this appointment was denied because Cortez has a scheduled appointment in October. As of the time of the evidentiary hearing, Nurse Gray said, Cortez was scheduled to go to the gastrointestinal (GI) clinic in April of 2013.

Cortez stated that no one ever came to his cell to tell him he had the appointment. He saw a physician named Dr. Thompson in March of 2012, and the doctor said that Cortez's symptoms were not heartburn. Dr. Thompson made the referral to the GI clinic. The next month, in April of 2012, Cortez saw Nurse Andrews, who told him that he was supposed to go to John Sealy Hospital in May. However, when Cortez saw Dr. Thompson in May, he discovered that he was not scheduled to go to the hospital. He was told that he would be referred in June, but the unit was locked down. Cortez said that he wanted to go to the hospital to get a "proper diagnosis." He has had EKG's and these show that his heart is normal.

## Cortez's Medical Records

The Court has received and reviewed Cortez's medical records, which are extensive. On January 23, 2012, Cortez saw a physician's assistant named Sanchez, who noted that Cortez had been recently treated for H.pylori; Cortez said that he had taken almost all of the medications and his stomach symptoms had resolved. He had no complaints of heartburn or stomach symptoms. She told him to finish taking the H.pylori medications and to continue taking Omeprazole and Ranitidine for heartburn symptoms.

On March 9, 2012, Cortez saw Nurse Mary Lane complaining of burning in his stomach, and she set out a treatment plan of Peptol-Bismol. On March 12, 2012, Cortez saw a nurse named Taliaferro asking to be checked for diabetes because he was losing weight, suffers thirst, and feels bad in his stomach. Two days later, he saw Nurse Andrews complaining of abdominal pain and burning. On March 21, he saw Taliaferro again complaining that he felt like he had a knot crawling in his stomach and saying that he has been treated for H.pylori twice but is not better. The nurses referred him to a medical provider, and Cortez saw Dr. Thompson on March 22, who ordered a number of tests, including a complete blood count, comprehensive metabolic panel, urinalysis, and a chest X-ray, including antero-posterior and lateral views.

Cortez saw Dr. Thompson again on April 3, and then saw Nurse Andrews on April 12, 2012. On April 27, he saw Nurse Andrews asking about the results of his X-rays, but was told that they had not yet been received. These X-rays found his lungs clear, his heart size normal, no evidence of tuberculosis, and his bones were unremarkable. On May 11, he saw Andrews again, asking to be tested for tapeworm. She referred him to a provider.

On June 15, 2012, Cortez saw Dr. Shrode, who noted that Cortez continued with the same symptoms of stomach pain which comes and goes and radiates to his chest. The doctor stated that Cortez had been treated for H.pylori twice but it had not helped. He ordered a lay-in to test for ova and parasites, and a referral to the GI clinic.

On July 10, 2012, Cortez saw Nurse Andrews complaining of epigastric pain, and she started him on Pepto-Bismol and referred him to a provider. He saw Dr. Shrode on July 12 and was told that he had an appointment with the hospital in Galveston on July 2 but had not shown up. Cortez stated that no one came to get him from segregation and that he would have gone to the appointment if he had known about it. He became angry but the escorting officers calmed him down; Dr. Shrode noted that the unit had been locked down that week.

On July 17, 2012, Cortez showed up in the clinic and saw Nurse Ashford complaining that his chest was hurting. He said that he had been dealing with this problem for a year but no one had done anything about it. She told him to notify the segregation nurses and go through the sick call process, but Cortez was argumentative and kept insisting that he had been dealing with the problem for a year. Cortez refused to leave the clinic until the sergeant showed up, and then left without difficulty. The next day, he saw Taliaferro asking about his lab results, and she told him that his thyroid labs were within normal limits.

Cortez saw Dr. Shrode again on July 27, 2012, asking to be checked for hepatitis, cancer, diabetes, and stomach or chest pain. Cortez stated that "he thinks he has stomach cancer because the X-ray tech told him there may be something there in his stomach." Dr. Shrode observed that Cortez had a previous diagnosis of H.pylori on at least two occasions and said that radiology indicated that there is nothing abnormal about his stomach. He said that Cortez did not have diabetes and referred him again for a GI evaluation.

On August 6, 2012, Cortez saw a nurse named Trahan, and she offered him aluminum/magnesium hydroxide tablets (Alamag) and referred him to the provider. On August 14, 2012, Cortez saw Nurse Andrews complaining of abdominal pain, and she gave him a three-day supply of Alamag. Two days later, he saw Andrews asking about results of X-rays which were taken in May. She read him the results, and he asked about a referral to Galveston. Andrews told him that the referral had been resubmitted on August 15 and was pending approval. On August 24, Cortez

4

saw Nurse Jock, who gave him more Alamag. An EKG was done, with normal results. One week later, Cortez saw Nurse Taliaferro, and she scheduled him to see a provider.

Cortez saw Dr. Shrode on September 5, 2012. He told the doctor that the Alamag helped him more than Zantac and Prilosec. Dr. Shrode noted that Cortez had an appointment with the GI clinic in Galveston in October and that he was in no apparent distress, did not have a fever, and his blood pressure was normal. He prescribed Alamag and a blood pressure medication called propranolol.

Legal Standards and Analysis

Cortez complains that Dr. Shrode and Nurse Andrews were deliberately indifferent to his serious medical needs. The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and

medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, it is plain that Cortez has failed to set out a viable constitutional claim. His medical records show, and Cortez does not dispute, that he has received a significant quantum of medical care; rather, his complaint is that this care and treatment has not proven as effective as he would have liked. This does not show a constitutional violation. Norton, 122 F.3d at 293. Cortez has not shown that the defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. On the contrary, he has seen medical personnel regularly, has received numerous different kinds of treatments, and has been ordered a number of tests in an attempt to diagnose his complaints. Nor does the fact that Cortez did not get a referral to the hospital in Galveston when he thought that he should demonstrate deliberate indifference. *See* Alfred v. Texas Department of Criminal Justice, 80 Fed.Appx. 926, 2003 WL 22682118 (5th Cir., November 13, 2003) (prison official's action in blocking a referral to a specialist even though the prison staff could not treat the prisoner's condition did not amount to deliberate indifference). While the medical

6

records indicate that Cortez was not called out for one appointment which he had at the hospital in Galveston, when the unit was on lockdown, he fails to show that any of the named Defendants in this case were responsible for this circumstance, nor that this amounted to deliberate indifference in any event. Because Cortez has entirely failed to demonstrate deliberate indifference to his serious medical needs, his claims are without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Cortez's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous and for failure to state a claim under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. §1915A. It is further

ORDERED that the Clerk shall send a copy of this Memorandum Order to the Administrator of the Three Strikes List for the Eastern District of Texas. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **3** day of **May, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE